BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
pbrown@bholaw.com

ZIMMERMAN LAW OFFICES. P.C.
THOMAS A. ZIMMERMAN. JR. (*pro hac vice forthcoming*)
7199 S. Kingery Highway, Unit 1148
Willowbrook. IL 60527
Tel: 312/440-0020
312/440-4180 (fax)
tom@attorneyzim.com

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

STEVEN LASCANO, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

RYDER TRANSPORTATION SOLUTIONS, LLC,

Defendant.

Case No. 5:26-cv-03150

**CLASS ACTION COMPLAINT**

**CLASS ACTION**

**JURY TRIAL DEMANDED**

Plaintiff Steven Lascano ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Ryder Transportation Solutions, LLC ("Defendant" or "Ryder"), in this Court which has jurisdiction under 28 U.S.C. § 1332(a) and 1332(d), and makes the following allegations based on personal knowledge as to facts pertaining to his own experiences and on information and belief as to all others:

## NATURE OF THE ACTION

1. Plaintiff is employed by Defendant as a commercial truck driver from July 7, 2025, to the present. The inside cabin of Defendant's trucks are equipped with Lytx, Inc. ("Lytx") DriveCam® Event Recorders ("DriveCams"), which are driver-facing cameras that, unbeknownst to Plaintiff, recorded confidential audio communications of Plaintiff while he was operating Defendant's trucks.

2. Defendant failed to disclose that the DriveCams were configured to record audio. Defendant also failed to obtain Plaintiff's consent to record his confidential audio communications.

3. Defendant's undisclosed practice of surreptitiously recording audio of Plaintiff was a violation of Plaintiff's rights of privacy.

4. There was no advisory, disclosure, or notice posted in the cabin of Defendant's trucks warning that audio would be, or was being, recorded. The lack of notice violated California Vehicle Code § 26708(b)(13)(B), and other state's laws.

5. As a result of Defendant's unlawful practices alleged herein, Plaintiff seeks to vindicate his statutory and common law rights to privacy on behalf of himself and other persons who had audio recordings made while they were in Defendant's vehicles equipped with a DriveCam.

## PARTIES, VENUE, JURISDICTION

6. Plaintiff is a citizen of California and resides in Lake Arrowhead, California.

7. Defendant is a Delaware limited liability company with its principal place of business in Florida. Defendant is a wholly owned subsidiary of Ryder System, Inc., a Florida corporation with its principal place of business in Coral Gables, Florida.

8. The Court has original subject matter jurisdiction under 28 U.S.C. § 1332(d) because this case is brought as a class action, the amount in controversy exceeds $5 million, exclusive of costs, there are 100 or more members of the putative class, and Plaintiff and Defendant have diverse citizenship.

9. In addition, the Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendant are diverse and the amount in controversy exceeds $75,000, exclusive of costs.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

### *DriveCams Recorded Audio of Plaintiff and Class Members*

11. The DriveCams are advertised as AI-powered commercial cameras equipped with advanced sensors to help an employer (in this case Defendant) assess what is happening on the road ahead (via an outward-facing camera) and inside the vehicle (via an inward-facing camera). The inward-facing DriveCam is installed on the windshield and faces the inside of the cabin, and it continuously monitors and records the driver and passengers within the vehicle's cabin.

12. The DriveCam is connected by wire to the electronic control module ("ECM") of the vehicle, allowing the DriveCam to receive inputs directly from the truck itself, such as telematics, fuel, and speed. As a result, the DriveCam is intended to capture potentially relevant data should an incident occur.[1]

[1] https://www.lytx.com/drivecam-event-recorder



BLOOD HURST & O' REARDON, LLP

00236244

13. The purported benefits of the DriveCam are touted as more accurate claims processing, and prevention of fraudulent claims against the trucking company.[2]

14. The DriveCam promotional material states that it identifies risky behaviors such as texting, failure to wear a seat belt, following distance, lane departure, and rolling stops. Triggering events for the DriveCam to trigger the Risk Detection Service include accelerating or braking too quickly, lane departure, rough roads/uneven surfaces, speeding, driver smoking, driver eating while the vehicle is in motion, and abrupt gear shifts.[3] Notably, in-cabin audio is not probative of any of the triggering events.

15. When a triggering event occurs, all DriveCam data is uploaded to Lytx, where a team of reviewers employed by Lytx analyze the data for potential unsafe driving behaviors. The data analysis is then made available to authorized individuals at the employer's organization (in this case Defendant), who may view the video and other ECM data and take corrective action as appropriate. According to Lytx's privacy policy, "[a]s a general policy, Lytx does not control how our Customers use data relating to Fleet Personnel and does not access or use such data except consistent with our Customer agreements. Where our Customer enables the collection or capture of data, the Customer shall determine the purpose and use of the data in accordance with applicable laws."[4]

16. The DriveCam has a "configurable recording option" that allows the employer (in this case Defendant) to "decide when to capture sound inside and outside the vehicle."[5] Here, upon information and belief, Ryder configured the

---

[2] *Id.*

[3] https://support.lytx.com/Support/s/article/Behaviors-and-Triggers-Risk-Detection? language=en_US

[4] https://www.lytx.com/legal/industry-update-and-data-policy

[5] https://www.lytx.com/getmedia/e5c08d5e-faaf-4545-9e27-22c17ac267de/lytx-sf400-event-recorder-brochure-(row).pdf



BLOOD HURST & O' REARDON, LLP

inward-facing DriveCams in its vehicles (or caused those DriveCams to be configured) to record audio inside the vehicle's cabin.

17. Aside from triggering events, Lytx's cameras can be enabled by employers to spy on drivers in real time, streaming live video and audio to authorized users of the system on demand. "The use of the cloud allows the fleet manager to view the road and the cabin as the vehicle moves. The road-facing lens streams up to twenty-four frames per second. The in-cab lens streams fifteen frames per second. Both the road-facing and in-cab lenses stream for thirty seconds, and then give you the option to continue live streaming. This is hard coded and cannot be changed."[6]

18. Upon information and belief, Defendant enabled and operated the inward-facing DriveCam's using this live streaming feature. For example, while driving a Ryder truck, Plaintiff stated that his managers lied about his missing paycheck and he wanted to record them to document their statements. This was a test to determine whether Defendant was listening to his audio inside the cabin of the truck. Shortly thereafter, Ryder sent to Plaintiff an Electronic Recording Policy that prohibits the recording of conversations at Ryder. Additionally, while driving a Ryder truck, Plaintiff stated that he forgot to bring his driver's license, and he hoped he would not get in trouble. Again, this was a test to determine whether Defendant was listening to his audio inside the cabin of the truck. As soon as Plaintiff drove into a Ryder facility after making that statement, he was confronted with a surprise inspection to determine whether he had his driver's license in his possession. This was the first time Plaintiff was ever subjected to a surprise inspection.

///

///

///

---

[6] https://kb.surfsight.net/hc/en-us/articles/360019674559-View-live-video-from-the-dashcam

### *Defendant Failed to Disclose that It Was Recording Audio of Plaintiff and Class Members*

19. In Plaintiff's employment onboarding materials, Ryder provided certain disclosures and advisories concerning the installation and operation of the DriveCams. However, these disclosures and advisories failed to disclose, and omitted the fact, that the inward-facing DriveCams in its vehicles were configured to record audio (including confidential communications of the drivers) inside the vehicle's cabin.

20. The disclosures and advisories made general references to the DriveCam recording facial scans and video only, and failed to disclose that the DriveCam was equipped with an integrated omnidirectional microphone that was configured by Defendant to capture and record audio in the cabin of Defendant's trucks. As a result, the DriveCams eavesdrop on audio communications—including in-person conversations and hands-free telephone conversations—occurring inside the truck's cabin. This practice of recording audio was not disclosed, not explained, and not consented to by Plaintiff and Class members.

21. For example, Defendant provided to Plaintiff a Notice and Authorization for In-Cab Video Telematics/Alerting Technology (the "Notice"), which states that "you may be required to drive, operate, or service a Ryder vehicle equipped with in-cab video safety and telematics and alerting technology (a "DriveCam") that may capture the vehicle operator's facial geometry, or information derived from a scan facial geometry." The Notice references only video (not audio) recording, and the only personal information described is "facial geometry." The Notice does not mention, and does not cover, audio, sounds, or communications. By specifying video and facial scans, Defendant implies that other data, such as audio and confidential communications, were not being intercepted and recorded.

22. Reinforcing the idea that audio is not being recorded, product material distributed by Defendant to its drivers entitled "Machine Vision + Artificial



BLOOD HURST & O' REARDON, LLP

Intelligence: Facts for Drivers" (the "Information Sheet") states that "the camera lens facing the outside is on a continuous recording. The inside camera lens is NOT on a continuous recording." Camera lenses are specific components of a camera that capture video, and not audio. The Information Sheet also fails to disclose that Defendant can, at any time, livestream any DriveCam in its fleet and spy on any driver without notice.

23. Drivers have access after-the-fact to recordings of them through their personal online account, which they can set up with Lytx. Lytx stores and makes available to authorized users the details regarding the triggering events and the recordings.

24. According to the Information Sheet, events are recorded only if a triggering event occurs. This is misleading because the DriveCam is constantly monitoring and sensing video and audio inputs. In order to capture the video and audio inputs prior to a triggering event, the DriveCam must be constantly eavesdropping and recording and storing data in a loop in case a triggering event occurs. When a triggering event occurs, the system has already stored video and audio data from prior to the triggering event. The extent of that constant surveillance and recording, and the disposition of that data, is a matter known exclusively to Lytx and/or Defendant.

25. Furthermore, there were no audible alerts indicating when a triggering event is recorded and stored in the system. Although the Information Sheet states that the DriveCam can be designed to issue corrective instructions to drivers, this never happened to Plaintiff.

26. Ryder set-up an account for Plaintiff with Lytx. On or about April 14, 2026, Plaintiff was shocked when he logged into his Lytx account for the first time and saw that dozens of videos with high quality audio had been captured of him carrying on confidential conversations while operating Defendant's trucks. After

Plaintiff discovered that his audio was being recorded, he complained to his supervisor.

27. Similarly, several truck drivers have complained online about inward-facing cameras, for example:[7]

- Feels like I've got no privacy in my truck because of the inward facing cam, but it's even worse cuz it records audio and I secretly like to listen to Riri Rihanna and it's super embarrassing when I have my weekly meeting with my boss 😭 😭
- Driver facing cameras are a blatant disregard for the human right to privacy and basic human dignity to not be f***ing watched.
- As long as I'm in the truck, it's literally my home. I wouldn't let my landlord put a camera in my apartment, so why would I consent to a job where my boss can put a camera in my home?
- They're an invasion of privacy.

28. As these comments illustrate, commercial truck drivers have a reasonable expectation that they are not being spied on every moment they are in the driver's seat, and that conversations that take place in their cabins while driving are confidential and not being eavesdropped upon, recorded, and stored by their employer.

29. The existence of this expectation of privacy is bolstered by the notice and posting requirements enacted in California Vehicle Code § 26708, which require that "a vehicle equipped with a video event recorder shall have a notice posted in a visible location which states that a passenger's conversation may be recorded." Cal. Veh. Code § 26708(b)(13)(B).

---

[7] https://www.reddit.com/r/Truckers/comments/1adgo1d/how_bad_are_the_inward_facing_ cameras/ (last visited May 18, 2026)

30. Defendant violated this statutory requirement with respect to the trucks that Plaintiff and Class members operated within the State of California, as no such notice was posted in Ryder's vehicles. The absence of the required notice further contributed to Plaintiff's erroneous belief that his conversations were not being recorded.

31. Defendant's audio monitoring and recording of Plaintiff and Class members violated Plaintiff's and Class members' reasonable expectation of privacy and was particularly egregious because it was undisclosed, secretive, constant, and unnecessary.

32. Plaintiff and Class members had no reason to believe that Defendant was using the DriveCam to record audio, and also transmitting audio data to third-party Lytx to review and analyze for the benefit of Defendant.

33. From Plaintiff's online Lytx account, Plaintiff is able to obtain and download dozens of separate instances where in-cabin recordings of Plaintiff's audio communications are being stored by Lytx, including in-cabin audio communications that occurred in California, Arizona, and New Mexico.

## CLASS ALLEGATIONS

34. **Class Definition**: Plaintiff brings this action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of Plaintiff, a National Class, a California Subclass, an Arizona Subclass, and a New Mexico Subclass (collectively, the "Class"), defined as follows:

> National Class: All persons whose audio conversations were intercepted or recorded by DriveCams installed in Defendant's vehicles while in the United States.
>
> California Subclass: All persons whose audio conversations were intercepted or recorded by DriveCams installed in Defendant's vehicles while in the State of California.

Blood Hurst & O' Reardon, LLP

> Arizona Subclass: All persons whose audio conversations were intercepted or recorded by DriveCams installed in Defendant's vehicles while in the State of Arizona.
>
> New Mexico Subclass: All persons whose audio conversations were intercepted or recorded by DriveCams installed in Defendant's vehicles while in the State of New Mexico.

35. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their immediate families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

36. Plaintiff reserves the ability to modify the definition of the proposed Class before the Court determines whether class certification is warranted.

37. The requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are met in this case.

38. The Fed. R. Civ. P. 23(a) elements of Numerosity, Commonality, Typicality, and Adequacy are all satisfied.

39. **Numerosity:** The Class is so numerous that joinder would be impractical, as Ryder employs 12,700 professional drivers.[8] Members of the Class can be identified through Defendant's records, Lytx's records, or by other means.

40. **Commonality:** Commonality requires that the Class members' claims depend upon a common contention such that determination of its truth or falsity will

---

[8] https://www.ryder.com/en-us/insights/blogs/logistics/ryder-by-the-numbers (last visited May 18, 2026)



BLOOD HURST & O' REARDON, LLP

00236244

resolve an issue that is central to the validity of each claim in one stroke. Here, there is a common contention for all Class members as to whether Defendant's DriveCams recorded drivers' audio conversations without consent.

41. **Typicality:** Plaintiff's claims are typical of the claims of the Class members in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct.

42. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class members. Plaintiff's claims are made in a representative capacity on behalf of the Class members. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the Class. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the Class members.

43. **This case satisfies Fed. R. Civ. P. 23(b)(2) - Policies Generally Applicable to the Class:** This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge to those practices hinge on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

44. **This case satisfies Fed. R. Civ. P. 23(b)(3) - Predominance:** There are many questions of law and fact common to the claims of Plaintiff and Class members, and those questions predominate over any questions that may affect individual Class members. Common questions and/or issues for Class members include, but are not necessarily limited to the following:

(a) Whether Defendant violated the Federal Wiretap Act;

(b) Whether Defendant violated California's Eavesdropping Statute;

(c) Whether Defendant violated Arizona's Eavesdropping and Communications Statute;

(d) Whether Defendant violated New Mexico's Abuse of Privacy Act;

(e) Whether Defendant violated Plaintiff's and Class members' right to privacy.

(f) Whether Plaintiff and Class members are entitled to actual damages, enhanced damages, statutory damages, disgorgement, and other monetary remedies provided by law;

(g) Whether injunctive and declaratory relief, and other equitable relief is warranted.

45. **Superiority:** This case is appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by individual Class members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual Class members to obtain effective relief from Defendant's misconduct. Even if Class members could mount such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be enhanced, and uniformity of decisions ensured.

///

///

///

**COUNT I**

**Violation of the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.***

**(on Behalf of the National Class)**

46. Plaintiff realleges paragraphs 1–45 as if fully set forth herein.

47. The Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, prohibits the interception of any wire, oral, or electronic communications. The statute confers a civil cause of action on "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a).

48. "Electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce…." 18 U.S.C. § 2510(12).

49. "Oral communication" is defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation…." 18 U.S.C. § 2510(2).

50. "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

51. "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

52. Defendant violated the Federal Wiretap Act when it intercepted and recorded the contents of Plaintiff's and Class members' wire, electronic, or oral communications using the DriveCams.

53. As a result, Plaintiff and Class members have suffered harm and injury due to the interception and transmission of private and personal, confidential, and sensitive communications, content, and data. Plaintiff and Class members have been

damaged by the interception or disclosure of their communications in violation of the Federal Wiretap Act, as described herein, and are entitled to preliminary, equitable, and declaratory relief; actual damages; statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000; punitive damages; and reasonable attorney's fees and litigation costs reasonably incurred. 18 U.S.C. § 2520(b)–(c).

**COUNT II**

**Violation of the California Eavesdropping Statute, Cal. Penal Code § 632**
**(on Behalf of the California Subclass)**

54. Plaintiff realleges paragraphs 1–45 as if fully set forth herein.

55. California Penal Code § 632, "Eavesdropping on or recording confidential communications," states that "[a] person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a" fine or imprisonment. Cal. Penal Code § 632(a).

56. A communication is confidential if the circumstances "reasonably indicate that any party to the communication desires it to be confined to the parties thereto." Cal. Penal Code § 632(c).

57. A person who has been injured by a violation of California Penal Code § 632(a) may bring an action against the person who committed the violation for (i) the greater of $5,000 or three times the amount of actual damages, and (ii) an injunction. Cal. Penal Code § 637.2(a)–(b).

58. Defendant violated California Penal Code § 632(a) when it used a recording device (*i.e.*, the DriveCams) to record Plaintiff's and California Subclass members' confidential communications without their consent.

59. As a result, Plaintiff and California Subclass members have suffered harm and injury due to the interception and transmission of private and personal,



BLOOD HURST & O' REARDON, LLP
00236244

confidential, and sensitive communications, content, and data. Plaintiff and California Subclass members have been damaged by the interception or disclosure of their communications in violation of the California Eavesdropping Statute, as described herein, and are entitled to preliminary, equitable, and declaratory relief; actual damages; statutory damages of $5,000; punitive damages; and reasonable attorney's fees and litigation costs reasonably incurred. Cal. Penal Code § 637.2(a)–(b).

**COUNT III**

**Invasion of Privacy Under the Common Law**

**(on Behalf of the National Class)**

60. Plaintiff realleges paragraphs 1–45 as if fully set forth herein.

61. Defendant's conduct alleged herein constituted a violation of privacy by intrusion upon seclusion.

62. Defendant's actions were intentional intrusion, physical or otherwise. Defendant configured the DriveCams to record audio of Plaintiff and Class members inside the truck's cabins.

63. Defendant's actions intruded upon the solitude or seclusion of Plaintiff and Class members. Defendant failed to disclose that it would, and did not obtain consent to, intercept and record audio of Plaintiff and Class members inside the truck's cabins.

64. Defendant's actions were highly offensive to a reasonable person. Plaintiff and Class members had a reasonable expectation of privacy regarding their conversations and sounds in the cabin of the trucks they operated. Defendant had no countervailing interest in intercepting and recording Plaintiff's and Class members' audio sounds and conversations that occurred in the trucks.

65. As set forth above, the DriveCam promotional material states that it identifies risky behaviors such as texting, failure to wear a seat belt, following distance, lane departure, and rolling stops, and the triggering events include

accelerating or braking too quickly, lane departure, rough roads/uneven surfaces, speeding, driver smoking, driver eating while the vehicle is in motion, and abrupt gear shifts.[9] Video recording is sufficient to accomplish these purposes, and in-cabin audio is not probative of any of the triggering events.

66. Constantly surveilling the audio sounds in the cabin of Defendant's trucks was not proportional, was unreasonable, and violated the privacy interests of Plaintiff and Class members.

67. As a result, Plaintiff and Class members have suffered harm and injury due to the interception and transmission of private and personal, confidential, and sensitive communications and other private moments. Plaintiff and Class members have been damaged by the interception or disclosure of their communications in violation of the right to privacy, as described herein, and are entitled to preliminary, equitable, and declaratory relief; actual damages; punitive damages; and reasonable attorney's fees and litigation costs reasonably incurred.

## COUNT IV

### Invasion of the Right of Privacy Under the California Constitution (on Behalf of the California Subclass)

68. Plaintiff realleges paragraphs 1–45 as if fully set forth herein.

69. Article I, Section 1 of the California Constitution establishes an inalienable right to pursue and obtain privacy. Among other things, it grants the right to Plaintiff and California Subclass members to conduct personal activities without observation, intrusion, or interference.

70. Defendant invaded Plaintiff's and California Subclass members' Constitutionally protected right to privacy. Defendant configured the DriveCams to record audio of Plaintiff and California Subclass members inside the truck's cabins.

---

9 https://support.lytx.com/Support/s/article/Behaviors-and-Triggers-Risk-Detection? language=en_US



BLOOD HURST & O' REARDON, LLP
00236244

71. Defendant failed to disclose that it would, and did not obtain consent to, intercept and record audio of Plaintiff and California Subclass members inside the truck's cabins.

72. Plaintiff and California Subclass members had a reasonable expectation of privacy under the circumstances. Plaintiff and California Subclass members had a reasonable expectation of privacy regarding their conversations and sounds in the cabin of the trucks they operated. Defendant had no countervailing interest in intercepting and recording Plaintiff's and California Subclass members' audio sounds and conversations that occurred in the trucks.

73. As set forth above, the DriveCam promotional material states that it identifies risky behaviors such as texting, failure to wear a seat belt, following distance, lane departure, and rolling stops, and the triggering events include accelerating or braking too quickly, lane departure, rough roads/uneven surfaces, speeding, driver smoking, driver eating while the vehicle is in motion, and abrupt gear shifts.[10] Video recording is sufficient to accomplish these purposes, and in-cabin audio is not probative of any of the triggering events.

74. Constantly surveilling the audio sounds in the cabin of Defendant's trucks was not proportional, was unreasonable, and violated the privacy interests of Plaintiff and California Subclass members.

75. As a result, Plaintiff and California Subclass members have suffered harm and injury due to the interception and transmission of private and personal, confidential, and sensitive communications and other private moments. Plaintiff and California Subclass members have been damaged by the interception or disclosure of their communications in violation of the right to privacy, as described herein, and are

[10] https://support.lytx.com/Support/s/article/Behaviors-and-Triggers-Risk-Detection ?language=en_US



BLOOD HURST & O' REARDON, LLP
00236244

entitled to preliminary, equitable, and declaratory relief; actual damages; punitive damages; and reasonable attorney's fees and litigation costs reasonably incurred.

**COUNT V**

**Violation of the Arizona Eavesdropping and Communications Statute**

**A.R.S. § 13–3005**

**(on Behalf of the Arizona Subclass)**

76. Plaintiff realleges paragraphs 1–45 as if fully set forth herein.

77. It is a violation of title 13, chapter 30, when a person "[i]ntentionally intercepts a conversation or discussion at which he is not present, or aids, authorizes, employs, procures or permits another to so do, without the consent of a party to such conversation or discussion." A.R.S. § 13-3005(A)(2).

78. "'Intercept' means the aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." A.R.S. § 13-3001(7).

79. Any person whose wire, oral or electronic communication is intentionally intercepted, disclosed, or used in violation of title 13, chapter 30 may bring a civil action against the person or entity that engaged in the violation to recover the following: (i) such preliminary and other equitable or declaratory relief as may be appropriate; (ii) statutory damages in an amount that is the greater of either: $100 a day for each day of the violation or $10,000; (iii) punitive damages in appropriate cases; and (iv) reasonable attorneys' fees and other reasonable costs of litigation. A.R.S. § 12-731(A).

80. "'Oral' communication means a spoken communication that is uttered by a person who exhibits an expectation that the communication is not subject to interception under circumstances justifying the expectation but does not include any electronic communication." A.R.S. § 13-3001(8).

81. Plaintiff and Arizona Subclass members had an expectation that their oral communications would not be intentionally intercepted, recorded, disclosed, or

used by DriveCams installed in Defendant's vehicles while in the State of Arizona without the consent of Plaintiff and Arizona Subclass members.

82. Defendant violated A.R.S. § 13-3005(A)(2) when it used a recording device (*i.e.*, the DriveCams) to intentionally intercept, record, disclose, or use Plaintiff's and Arizona Subclass members' oral communications without their consent.

83. As a result, Plaintiff and Arizona Subclass members have suffered harm and injury due to the interception, recording, disclosure, or use of oral conversations and discussions without their consent. Plaintiff and Arizona Subclass members have been damaged by the interception, recording, disclosure, or use of oral conversations and discussions in violation of A.R.S. § 13-3005(A)(2), as described herein, and are entitled to (i) such preliminary and other equitable or declaratory relief as may be appropriate; (ii) statutory damages in an amount that is the greater of either: $100 a day for each day of the violation or $10,000; (iii) punitive damages; and (iv) reasonable attorneys' fees and other reasonable costs of litigation. A.R.S. § 12-731(A).

## COUNT VI

### Violation of the New Mexico Abuse of Privacy Act
### N.M. Stat. Ann. §§ 30-12-1 through 30-12-11
### (on Behalf of the New Mexico Subclass)

84. Plaintiff realleges paragraphs 1–45 as if fully set forth herein.

85. The New Mexico Abuse of Privacy Act provides, in relevant part, that "[i]nterference with communications consists of knowingly and without lawful authority . . . reading, interrupting, taking or copying any message, communication or report intended for another by telegraph or telephone without the consent of a sender or intended recipient thereof" or "using any apparatus to do or cause to be done any of the acts hereinbefore mentioned or to aid, agree with, comply or conspire

with any person to do or permit or cause to be done any of the acts hereinbefore mentioned." N.M. Stat. Ann. §§ 30-12-1(C), (E).

86. Any person whose communication(s) has been interfered with in violation of the New Mexico Abuse of Privacy Act "shall: (1) have a civil cause of action against any person who intercepts, discloses or uses, or procures any other person to intercept, disclose or use such communications; and (2) be entitled to recover from any such person actual damages, but not less than liquidated damages computed at the rate of one hundred dollars ($100) for each day of violation or one thousand dollars ($1,000), whichever is higher; punitive damages; and a reasonable attorney's fee and other litigation costs reasonably incurred." N.M. Stat. Ann. § 30-12-11(A).

87. Plaintiff and New Mexico Subclass members had their oral communications intercepted and recorded by DriveCams installed in Defendant's vehicles while in the State of New Mexico. Defendant intercepted, recorded, disclosed and/or used such oral communications without the consent of Plaintiff and New Mexico Subclass members.

88. Defendant violated the New Mexico Abuse of Privacy Act when it used a recording device (*i.e.*, the DriveCams) to intercept and record Plaintiff's and New Mexico Subclass members' oral communications intended for another without their consent.

89. Defendant's conduct was maliciously intentional, fraudulent, oppressive, or committed recklessly or with a wanton disregard to the rights of Plaintiff and New Mexico Subclass members.

90. As a result, Plaintiff and New Mexico Subclass members have suffered harm and injury due to the interception, recording, disclosure, and/or use of their oral communications intended for another without their consent. Plaintiff and New Mexico Subclass members have been damaged by the interception, recording, disclosure, and/or use of their oral communications in violation of the New Mexico

Abuse of Privacy Act, as described herein, and are entitled to damages in an amount not less than liquidated damages computed at the rate of one hundred dollars ($100) for each day of violation or one thousand dollars ($1,000), whichever is higher; punitive damages; and reasonable attorney's fees and litigation costs reasonably incurred. N.M. Stat. Ann. § 30-12-11(A).

## PRAYER FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, requests that the Court:

A. Determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff is a proper Class Representative, and appoint Plaintiff's counsel as counsel for the Class;

B. Award Plaintiff and Class members appropriate relief, including actual, statutory, and punitive damages;

C. Award Plaintiff and Class members restitution, disgorgement, and other equitable relief as the Court deems proper;

D. Award injunctive relief as may be appropriate pursuant to 18 U.S.C. § 2520(b)(1) and Cal. Penal Code § 637.2(b), including (i) enjoining Defendant from intercepting and recording audio communications inside the cabin of Defendant's trucks, and/or (ii) mandatorily enjoining Defendant to post notice in the cabin of Defendant's trucks warning that audio would be, or was being, recorded, as required by California Vehicle Code § 26708(b)(13)(B);

E. Award declaratory relief as may be appropriate, including a declaration that Defendant improperly intercepted and recorded audio communications inside the cabin of Defendant's trucks

without notifying Plaintiff and Class members that audio would be, or was being, recorded;

F. Award attorneys' fees and all other costs of prosecuting this action;

G. Award Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

H. Grant additional legal or equitable relief as the Court may find just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated: June 8, 2026

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
PAULA R. BROWN (254142)

By: *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
pbrown@bholaw.com

ZIMMERMAN LAW OFFICES, P.C.
THOMAS A. ZIMMERMAN, JR (*phv forthcoming*)
7199 S. Kingery Highway, Unit 1148
Willowbrook, IL 60527
Tel: 312/440-0020
312/440-4180 (fax)
tom@attorneyzim.com

*Attorneys for Plaintiff and the Proposed Class*